STATE OF TENNESSEE, ex rel. HENRY SMITH, JR., Plaintiff in Error,

*v.*

LYNN BOMAR, Warden, Tennessee State Penitentiary.

368 S.W. 2d 748.

*(Nashville,* December Term, 1962.)

Opinion filed May 10, 1963

Mose J. Davie, Nashville, for plaintiff in error.

George F. McCanless, Attorney General, Henry C. Foutch, Assistant Attorney General, Nashville, for the State.

Mr. Justice White delivered the opinion of the Court.

Henry Smith, Jr. was indicted, tried and convicted for the killing of the proprietor of a liquor store in Memphis, Tennessee, on September 2nd, 1960 with a pistol while in the perpetration of a robbery. The jury found him guilty and sentenced him to death by electrocution. His motion for a new trial was overruled.

This conviction was appealed to this Court and upon consideration of the assignments of error set out therein the conviction was affirmed and the Court in so doing said:—"There is really no controversy about the facts." The facts of the case were set out in the opinion, which

appears in *Smith v. State,* 209 Tenn. 499, 354 S.W.2d 450. There was no appeal from this decision.

On February 15th, 1962, Henry Smith, Jr. filed his petition for the writ of habeas corpus in the Criminal Court for Davidson County, Tennessee, in which he stated that "on or about the 27th day of January, 1961 he was found guilty of murder in the First Degree and murder in the preparation (perpetration) of a robbery."

"The petitioner, a man of little education and with no training in law, was not competent to protect or assert his constitutional rights. It is true that the petitioner was represented by counsel, but facts show that it is also true that said representation was not effective and that said counsel was so incompetent, and grossly lacking in concerns of the responsibility in hand as to amount to virtually no representation."

In the answer filed by the respondent it is set out that the defendant was represented by counsel in the trial of the case and by counsel on appeal to this Court which resulted in the opinion of the Court published as aforesaid.

It was further averred in the answer that the petitioner was arraigned on a warrant charging first degree murder on the 6th day of September, 1960. He was arraigned on an indictment on September 19th, 1960 before Judge Preston Battle of the Criminal Court for Shelby County.

It is a well settled proposition of law in this State that the writ of habeas corpus may not be used to make a collateral attack against a valid conviction and judgment and this is especially true when such verdict of the jury and the judgment of the Trial Court thereon has

been reviewed and approved by our Court and found to be without error. *Bomar v. State ex rel. Stewart,* 201 Tenn. 480, 300 S.W.2d 885; *State ex rel. Potter v. Bomar,* 209 Tenn. 577, 354 S.W.2d 767. *State ex rel. Marvin Holbrook v. Bomar,* decided February 7, 1963, 211 Tenn. 243, 364 S.W.2d 887.

In the case of *State ex rel. Holbrook v. Bomar,* supra, 211 Tenn. pages 246, 247, 364 S.W.2d pages 888-889, the Court said:

"A petition for the writ of habeas corpus, seeking release of one imprisoned under a judgment, is not a direct, but a collateral attack upon such judgment, and cannot prevail unless such judgment is void. *Giles v. State ex rel. Giles,* 191 Tenn. 538, 545, 235 S.W.2d 24. (And citing other cases.)

" 'The writ of habeas corpus may not be employed as the means of assaulting a judgment of court unless the judgment assailed is void. *State ex rel. Grandstaff v. Gore,* 182 Tenn. 94, 98, 184 S.W.2d 366. The reason for this is that the use of the writ as the weapon of assault is a collateral, rather than a direct assault upon the judgment.' *Giles v. State ex rel. Giles,* supra, 191 Tenn. 545, 235 S.W.2d 28.''

█ It is equally well settled in this State that the writ of habeas corpus may not be used as a substitute for or in lieu of an appeal. *State ex rel. v. West,* 139 Tenn. 522, 201 S.W. 743; *State ex rel. Underwood v. Brown,* 193 Tenn. 113, 244 S.W.2d 168; *State ex rel. Potter v. Bomar,* supra; *State ex rel. Holbrook v. Bomar,* supra.

█ It appeared to us when this case was here on direct appeal that the petitioner herein, the plaintiff in error

therein, was represented capably by competent counsel at the time of his trial and that all of his rights were fully protected by the Public Defender of Shelby County.

The petitioner herein claims that his constitutional rights were violated in some manner because a State witness made a remark to the jury that he had made a statement just after the deceased was killed "that a Negro shot a White man." This exact matter was dealt with in the opinion by this Court delivered by Mr. Justice Burnett, now Chief Justice, on behalf of the Court at page 505 of 209 Tenn., page 452 of 354 S.W.2d, where it is said:

"Another argument on behalf of the plaintiff in error is that one of the witnesses in testifying said, '* * * the Lord be, here is a negro shot a white man.' * * * Thus by the use of the reference to the plaintiff in error as a negro and the dead man as a white man that this was inflammatory to such a degree that it incited the passions of the jury. We notice in the first place that the witness who made this statement is likewise a colored man—one of the two colored men working in the liquor store—and that the way it was done and all could not and certainly did not arouse the passionate instincts of the jury any more than their observation of such facts would have if they in themselves would arouse passions."

Therefore, we think there could not be anything in this assignment.

The brief on behalf of the plaintiff in error herein, the petitioner below, makes this further contention.

"Petitioner further contends that the record of his

trial in the Shelby County Criminal Court contains a flaw to the jurisdiction of the Court. The question of petitioner's conviction under a Statute of Tennessee enacted by a legislature that has not been reapportioned as required by the Constitution of Tennessee.''

The fallacy of this position is found in the history of the penalty for the crime of murder in the first degree. Chapter 23 of the Public Acts of 1829, which was an Act to reform and amend the penal laws of the State of Tennessee, provided by Section 4 thereof that:

''Every person convicted of the crime of murder in the first degree, or as accessory before the fact to such crime, shall suffer death by hanging by the neck.''

This Act was carried into the Code of 1858. By Chapter 36 of the Acts of 1913, First Extra Ordinary Session the method of executing the death penalty was changed from hanging to electrocution.

By Chapter 181 of the Public Acts of 1915 it was provided by Section 1 thereof:

''That the death penalty as punishment for crime be, and the same is hereby abolished, and in lieu thereof, and as a substitute thereof, shall be the punishment of life imprisonment in the State Penitentiary; provided, that this Act shall not interfere with the operation of statutes providing for the death penalty as a punishment for the offense of rape * * *.''

By Chapter 14 of the Public Acts of 1917 it was provided that Chapter 181 of the Acts of 1915, which abolished the death penalty as therein provided be and same was repealed.

By Chapter 4 of the Public Acts of 1919 the said Chapter 181 of the Public Acts of 1915 was again repealed in this language:

"That Chapter 181 of the Public Acts of 1951 entitled 'A Bill to be entitled an Act to abolish the death penalty, except in cases of rape and convicts serving life terms in State penitentiary as punishment for crime and to substitute therefor the punishment of imprisonment for life,' be, and the same is, hereby repealed."

By Chapter 5 of the Public Acts of 1919 it was provided that it shall be the duty of the jury convicting one for murder in the first degree to fix the punishment, "which punishment shall be death in the mode prescribed by law for the infliction of the death penalty in capital cases, or the Jury may, if they are of opinion that there are mitigating circumstances, fix the punishment at imprisonment in the penitentiary for life, or for some period over twenty years." By Section 3 of said Chapter 5 it was provided that:

"Chapter 181 of the Acts of the Regular Session of the General Assembly of 1915, (which was) 'A Bill to be entitled an act to abolish the death penalty, except in cases of rape, * * * as punishment for crime, and to substitute therefor the punishment of life imprisonment,' * * * be, and the same are hereby repealed."

It appears, therefore, that the death penalty as punishment for crime, except in cases of rape, was abolished by Chapter 181, supra, and this remained the law until 1917 when an attempted repeal of said Chapter 181 was made by Chapter 14 of the Public Acts of 1917.

The General Assembly meeting in 1919 adopted Chap-

ters 4 and 5 which made effective absolutely the repeal of Chapter 181 of the Public Acts of 1915 as aforesaid.

Therefore, it appears beyond doubt that the extreme penalty for murder in the first degree has been death in Tennessee since 1829, except for the period aforesaid. If the Legislature of 1919 which reestablished the death penalty for murder in the first degree was invalid because of lack of proper apportionment by the Legislature, then the Act of 1915, being Chapter 181, was likewise invalid for the same reason; that is, that the Legislature was improperly apportioned. The Act of abolishment could have no more validity than the Act restating or reestablishing the penalty.

There are other reasons just as cogent, just as convincing and just as solid for holding that this contention of the petitioner is without merit.

■ It has never been seriously contended nor has it ever been held by any Court in any State or by the United States Supreme Court that the Acts of a State Legislature are invalid simply because of the failure to properly apportion itself. It was not so held in the case of *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663.

In the case of *La Rose v. Takash,* 262 Minn. 552, 115 N.W.2d 687, the Supreme Court of Minnesota dismissed a state prisoner's habeas corpus proceedings as being without merit which contended that the statute defining the substantive offense of which he was convicted was invalid because the Legislature which adopted said offense had not been reapportioned as required by the State Constitution. The prisoner appealed to the United States Supreme Court and in a per curiam opinion that

Court dismissed the appeal for want of a substantive federal question. 371 U.S. 114, 83 S.Ct. 172, 9 L.Ed.2d 168, decided November 19, 1962.

The case of *Kidd v. McCanless,* 200 Tenn. 273, 292 S.W.2d 40 is authority for the same holding.

In the brief filed here on behalf of the petitioner it is said "some relatives or friends of Henry Smith, Jr., employed Mr. John R. Tucker, a practicing attorney in Memphis, Shelby County, Tennessee to prepare the Bill of Exceptions and appeal his case to the Supreme Court of Tennessee." Thus it is seen that this defendant was represented by the Public Defender of Shelby County on the trial of this case and then on appeal by counsel employed by relatives or friends.

In this habeas corpus proceedings the Trial Judge appointed Mose J. Davie of the Nashville Bar to represent petitioner, and he has carried out his duty to his client and his duty as a lawyer in a most commendable manner.

This is the second time that this case has been before us, first by way of direct appeal and now by writ of habeas corpus. We are of the opinion that this petitioner has had a full, fair and complete trial with all of his constitutional guaranties being fully asserted and properly protected. Therefore, the action of the Trial Court in dismissing his petition is affirmed.